**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| KRIS LEVILL, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI, *Acting Commissioner of* )<br>*the Social Security Administration*, )<br>)<br>      Defendant. ) | No. 1:21-cv-00001-MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of Social Security, denying the application of Kris Levill ("Plaintiff") for Disability Insurance Benefits ("DIB").[1] In January 2019, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). (Tr. 136–137). Plaintiff alleged disability due to several cervical spine issues and PTSD, with an alleged onset date of June 13, 2018. (Tr. 99, 186). In June 2020, following a hearing, an Administrative Law Judge ("ALJ") issued her decision, concluding that Plaintiff was not disabled as defined in the Act. (Tr. 31–45). For the following reasons, the Court affirms.

**I.   Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[1] Section 1383(c)(3) of the Act provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 45), the Appeals Council denied Plaintiff's request for review, (Tr. 1–7); thus, the ALJ's decision stands as the Commissioner's final decision.

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

2

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp." *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.     **The ALJ's Decision**

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff had not perform substantial gainful activity ("SGA") since June 13, 2018, the alleged onset date of disability.  (Tr. 33).  At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, status post fusion and laminectomy; left carpal tunnel syndrome; facet joint arthropathy of the lumbar spine; attention deficit hyperactivity disorder ("ADHD"); generalized anxiety disorder; and unspecified depressive disorder.  (Tr. 33).  At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 34).  Thus, the ALJ found Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with several physical and mental limitations.  (Tr. 36–43). Plaintiff cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs and stoop.  She can perform occasional overhead reaching, pushing, or pulling bilaterally and frequent handling and fingering.  Plaintiff is limited to performing simple routine tasks and work with production expectations, but the work must not be at a fast pace such as an assembly line.  She can have occasional interaction with the public.  At Step 4, the ALJ found Plaintiff could not return to her past relevant work based on the ALJ's RFC finding.  (Tr. 43).  At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff can perform, despite her exertional limitations, such as an electrical assembler, merchandise marker, and garment sorter.  (Tr. 43–44).  Consequently, the ALJ concluded Plaintiff is not disabled under the Act.  (Tr. 44).

### III. Discussion

Before the Court are three specific issues in this case: (1) whether substantial evidence supports the ALJ's RFC finding, (2) whether the ALJ properly evaluated the medical opinion evidence, and (3) whether the ALJ properly evaluated Plaintiff's pain symptoms.

1. *The ALJ's RFC Finding Is Based on Substantial Evidence*

First, Plaintiff argues that the RFC is not based on substantial evidence because the ALJ considered the medical opinion of Dr. Jerry Cunningham, (Tr. 622–29), and the prior administrative medical finding of Dr. James Johnson, (Tr. 94–96). Doc. [21] at 3–5. While Plaintiff is correct that courts do not consider the opinions of non-examining, consulting physicians *standing alone* to be substantial evidence, see *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999), here, the ALJ did not rely solely on Dr. Johnson's opinion to reach her conclusions but rather viewed the opinion as *one* part of the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (allowing ALJ reliance on a "non-examining consulting physician" because the ALJ did not rely "solely" on the report and viewed the opinion as "one part of the record"). Similarly, the ALJ did not *solely* consider Dr. Cunningham's one-time examination when formulating Plaintiff's mental RFC. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding ALJ did not err in considering a state agency psychologist's opinion along with the medical evidence as a whole); *Kamann v. Colvin*, 721 F3d 945, 951 (8th Cir. 2013) (finding that a state agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments). In addition to considering those two medical opinions, the ALJ developed the RFC based on all relevant evidence of record including imaging, frequently normal examination findings, minimal and conservative mental health treatment, notes from treating providers, opinions from other state agency consultants', and Plaintiff's reported activities of daily living. (Tr. 36–43); *see Despain v.*

5

*Berryhill*, 926 F.3d 1024, 1028–29 (8th Cir. 2019) (finding substantial evidence supported RFC finding based on treating and other providers' notes, state agency consultants' opinions, and claimant's treatment and daily activities).

Plaintiff further protests the inadequacy of Dr. Johnson's prior administrative medical finding arguing that his opinion was completed almost a year prior to the ALJ's opinion.  Doc. [21] at 4.  However, Dr. Johnson assessed Plaintiff's limitations in July 2019, which was over a year *after* the onset of Plaintiff's alleged disability; thus, the opinion is based on evidence well within the period at issue.  *See Orduna-Solorzano v. Kijakazi*, 4:20-cv-1464-MTS, 2022 WL 503731, at *9 (E.D. Mo. Feb. 18, 2022) (concluding the same).  Moreover, the ALJ specifically considered and cited the post-July 2019 medical records that were rendered *after* Dr. Johnson's evaluation, see (Tr. 40), and Plaintiff "does not argue that the ALJ failed to review any of the submitted evidence or that evidence from [that] period of time went unconsidered." *Adamczyk v. Saul*, 817 F. App'x 287, 290 (8th Cir. 2020) (holding the ALJ did not need to order another consultive examination in light of evidence that arose after the medical evaluation).  And, upon consideration of that later evidence, the ALJ found Dr. Johnson's exertional finding consistent with the record.[2]  (Tr. 42); *see Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (finding opinions of non-examining, reviewing medical examiners consistent with evidence that arose *after* those examiners wrote their opinions).  Notably, Plaintiff points to no later medical records that could have effected Dr. Johnson's RFC finding or undermined the persuasiveness of his opinion. *Compare Bauer v. Kijakazi*, 4:21-cv-176-MTS, 2022 WL 1136140, at *5 (E.D. Mo. Apr. 18, 2022) (finding medical evidence *after* the date of the medical examiner's evaluation would not change the outcome of the doctor's opinion), *with Naumann v. Kijakazi*, 4:20-cv-1048-MTS, 2022 WL

---

[2] Notably, the ALJ actually imposed *greater* functional limitations in the RFC than Dr. Johnson opined, but still found his conclusion that Plaintiff could perform "light work" consistent with the record as a whole.

670134, at *8 (E.D. Mo. Mar. 7, 2022) (finding medical evidence *after* the date of the medical examiner's evaluation negatively impacted the persuasiveness of the medical opinion). Thus, the ALJ properly relied on Dr. Johnson's prior administrative medical finding because he is "highly qualified and [an] expert[] in Social Security disability evaluation." 20 C.F.R. § 404.1513a (requiring ALJ to consider evidence of prior administrative medical findings); *Masterson v. Barnhart*, 363 F.3d 731, 737–39 (8th Cir. 2004) (holding the ALJ properly relied on the assessments of a non-examining physicians in determining the claimant's physical RFC).

2. ***The ALJ Properly Evaluated Medical Opinions of Record***

Next, Plaintiff argues the ALJ improperly evaluated the persuasiveness of three medical opinions of record. Doc. [21] at 5–8. The ALJ is guided by 20 C.F.R. § 404.1520c when considering and articulating the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c. The ALJ considers several factors when determining how persuasive a medical opinion is but "the most important factors" are "supportability" and "consistency." *Id.* at § 404.1520c(b). As such, the regulation requires the ALJ to "explain" how he or she considered those two factors in the disability decision. *Id.* As to the other factors, the ALJ "may, but [is] *not required to*, explain" the consideration of the other factors.[3] *Id.* (emphasis added).

In evaluating the supportability factor, an opinion is more persuasive based on the relevant objective medical evidence and supporting explanations presented by the medical source to support his or her opinion. *Id.* at § 404.1520c(c)(1). With regard to consistency, an opinion is more persuasive the more consistent the opinion is with evidence from other medical and

---

[3] The Court notes that if Plaintiff is arguing that the ALJ failed to discuss factors other than supportability or consistency, then Plaintiff seeks a level of explanation *not* required by the regulations, as Plaintiff points to no "competing" medical opinion or administrative medical finding. 20 C.F.R. § 404.1520c(b)(3) (requiring discussion of other factors when two or more medical opinions are equally supported and consistent with the record).

7

nonmedical sources in the record. *Id.* at § 404.1520c (c)(2). Plaintiff argues the ALJ failed to discuss the supportability and/or consistency factors when evaluating the opinions of Dr. Cunningham, Dr. Johnson, and Dr. Martin Isenberg.

First, Plaintiff points to the ALJ's conclusion that Dr. Cunningham's medical opinion is "persuasive." (Tr. 42). In June 2019, Dr. Cunningham, a licensed psychologist, opined that Plaintiff had mild problems in interacting with the public but no problems with simple or complex instructions or decisions, interacting with supervisors or coworkers, or responding to usual work situations and changes in work settings. (Tr. 629). The ALJ found Dr. Cunningham's lengthy explanations and ultimate conclusion supported by the "minimal" problems Dr. Cunningham observed during his in-person testing and examination of Plaintiff. *See* 20 C.F.R. § 404.1520c(c)(1) (explaining objective medical evidence and supporting explanations are persuasive to the "supportability" factor). Regarding consistency, the ALJ found Dr. Cunningham's assessment consistent with other evidence of record, including Plaintiff's mental health diagnoses and ongoing medications. *Id.* at § 404.1520c(c)(2) (explaining the more consistent a prior administrative medical finding is with evidence from the record, the more persuasive the medical finding will be); *Adamczyk*, 817 F. App'x at 290 (finding an expert's medical opinion consistent with various clinical findings and course of treatment shown in the record).

Second, Plaintiff points to the ALJ's conclusion that Dr. Johnson's administrative medical finding is "partially persuasive." (Tr. 42). In July 2019, Dr. Johnson, a state agency consultive examiner, found Plaintiff's spine issues and other arthropathies to be severe impairments, and he concluded Plaintiff would be limited to light work with occasional postural limitations, limited overhead reaching, and mildly restricted handling with the left hand. (Tr. 94–96). The ALJ found

8

Dr. Johnson's exertional finding (i.e.: "light work") and other functional restrictions supported by his analysis of the record and subsequent finding that Plaintiff suffered from several severe physical impairments. As to consistency, the ALJ found Dr. Johnson's exertional finding (i.e.: "light work") consistent with the record. *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (remanding where ALJ failed to address whether medical opinion was *consistent* with other evidence of record "as required by the applicable regulation"). However, the ALJ found that the record supported *greater* functional restrictions than Dr. Johnson had opined and ultimately concluded Dr. Johnson's opinion was partially persuasive.[4]

Third, Plaintiff points to the ALJ's conclusion that Dr. Isenberg's administrative medical finding is "partially persuasive." (Tr. 42). In July 2019, Dr. Isenberg, a state agency consultive examiner, found that Plaintiff suffered from severe impairments of depression, anxiety, and ADHD, but he concluded that no work restrictions were necessary because "evidence in the file does not support severe functional limitations related to any mental impairment." (Tr. 90–92). The ALJ found Dr. Isenberg's conclusion that Plaintiff suffered from the severe impairments supported by objective medical evidence and consistent with the record. However, the ALJ found Dr. Isenberg's finding that Plaintiff's severe impairments caused her only "mild" limitations and no work limitations "internally inconsistent" and "partially supported." By definition, a mental impairment is "severe" based on a claimant's degree of functional limitations, 20 C.F.R. § 404.1520a(c), and "mild" ratings of limitations generally means that Plaintiff's impairment is *not* severe. *See id.* at § 416.920a(d)(1). As such, the ALJ questioned how Dr. Isenberg could have concluded that Plaintiff had several *severe* mental impairments but only *mild* limitations and *no*

---

[4] As an example, Dr. Johnson opined that Plaintiff could "occasionally" climb ladders, ropes, or scaffolds, see (Tr. 95), but the ALJ's RFC stated Plaintiff could *never* do those activities.

work restrictions. The ALJ also pointed to parts of the record that demonstrated Plaintiff had at least some "moderate" limitations, as opposed to just "mild" limitations, as opined by Dr. Isenberg.

For the reasons discussed above, the ALJ properly considered the supportability and consistency factors in accordance with the applicable regulations. *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1)–(2).

3. ***The ALJ Properly Evaluated Plaintiff's Credibility***

Finally, Plaintiff argues that the ALJ improperly discounted her subjective symptoms. The ALJ did not dispute that Plaintiff experienced symptoms, but determined Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible. (Tr. 37). When analyzing a claimant's credibility, the ALJ must consider various factors. *See* 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (explaining the factors are (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions); *see also Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."). However, the "ALJ need not explicitly discuss each factor."[5] *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). The "credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) ("ALJ is in the best position to determine the credibility").

---

[5] Despite Plaintiff's argument to the contrary, the ALJ is not required to specifically discuss each factor and how it relates to Plaintiff's credibility. *See Partee*, 638 F.3d at 965 (stating that "[t]he ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting a [plaintiff's] subjective complaints") (internal quotation and citation omitted); *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every *Polaski* factor relates to the [plaintiff's] credibility").

10

The Court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017).

Plaintiff asserts that the only *Polaski* factor mentioned in the decision is her activities of daily living. Doc. [21] at 8–10. However, the ALJ found Plaintiff's symptoms not to be as limiting as Plaintiff claimed based on other factors, such as objective medical evidence, including clinical findings during her physical and mental status examinations, treatment and medication, aggravating factors, and medical opinions.

As to physical limitations, the ALJ found that the "medical evidence demonstrated that the claimant's back disorders and carpal tunnel syndrome caused her functional limitations, but not to the extent alleged." (Tr. 40). The ALJ noted improvement of Plaintiff's back pain and hand symptoms post-cervical-spine-surgery in August 2018. *Id.* While "temporary improvement in a patient's symptoms post-operation does not necessarily equate to long-term improvement," *Koch v. Kijakazi*, 4 F.4th 656, 665 (8th Cir. 2021), the ALJ considered Plaintiff's consistent unremarkable or mild physical examinations post-surgery. *Goff*, 421 F.3d at 792 (holding proper the ALJ's consideration of unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints); *Schwandt*, 926 F.3d at 1012 (explaining ALJ may discount subjective complaints that are "undermined" by the medical evidence); 20 C.F.R. § 404.1529(c)(2) (considering objective medical evidence in evaluating intensity and persistence of symptoms). As an example, the ALJ found Plaintiff's alleged limitations related to walking and standing inconsistent with her consistently normal gait throughout the record as well as normal strength in her lower extremities.[6] *See Forte*, 377 F.3d at 895 (explaining lack of objective medical

---

[6] Overall, the ALJ discussed the nearly 20 examinations (physical, neurological, and/or mental) by various doctors during the alleged onset date through October 2019 that were largely normal. (Tr. 258, 264–65, 402, 464–71, 473, 475, 577, 581, 589, 594, 610, 615, 622–27, 635, 649–50, 670, 687, 689, 691, 698, 702, 714).

11

evidence to support a claimant's complaints is relevant in assessing credibility); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (holding the ALJ may find a claimant's subjective pain complaints not credible in light of objective medical evidence to the contrary). While the ALJ discussed some weakness and numbness of Plaintiff's upper extremities, especially following her surgery, the ALJ noted after her rehabilitation therapy she exhibited only mild reductions in intrinsic strength in her left hand and full range of motion in both upper extremities. *Moore*, 572 F.3d at 525 (upholding ALJ's analysis finding that relief from conservative treatments were inconsistent with allegations of disabling symptoms). The ALJ also noted trigger point injections that provided Plaintiff relief. *Id.* The ALJ also considered aggravating factors, such as Plaintiff's report of neck and hand numbness that worsened when her hands were above her head or when she worked with them too much during therapy. *See* 20 C.F.R. § 404.1529(c)(3)(iii) (explaining the agency considers the "aggravating factors" when evaluating symptoms).

With regard to Plaintiff's mental limitations, the ALJ looked at Plaintiff's minimal and conservative treatment.[7] *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *see also Vanlue v. Astrue*, 4:11-cv-595-TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (finding minimal and conservative mental health treatment weigh against a finding of disability). As well as Plaintiff's medication—diazepam and Adderall—for her mental impairments. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (explaining the agency considers the "effectiveness" of medication when evaluating symptoms); *Mabry*, 815 F.3d at 391–92 ("If an impairment can be controlled by treatment or medication, it

---

[7] The ALJ noted Plaintiff was treated for mental health issues by her primary care provider. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (finding absence of evidence of ongoing counseling or psychiatric treatment disfavors finding of disability); *Kirby*, 500 F.3d at 708–09 (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis).

12

cannot be considered disabling."). The ALJ also noted the consistent normal mental status examinations throughout the period at issue.[8] *See Adamczyk*, 817 F. App'x at 291; 20 C.F.R. § 416.920a(c)(1) (rating the degree of functional mental impairments by considering longitudinal records of clinical signs).

Moreover, the ALJ considered five medical opinions of record. (Tr. 42); 20 C.F.R. § 404.1529(b)–(c) (evaluating symptoms with medical opinions). No medical opinion provided a contrary conclusion of disablement[9]; and despite having several medical providers for physical and mental impairments, no treating physician imposed greater limitations on Plaintiff than the ALJ. *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (discrediting Plaintiff's subjective complaints based on absence of physician-ordered limitations). Finally, the ALJ considered Plaintiff's own statements of functional limitations and daily activities when evaluating her credibility.[10] *See* 20 C.F.R. § 404.1529(4) (considering a claimant's own statements about the intensity, persistence, and limiting effects of symptoms).

Finally, and despite the Court concluding that the ALJ properly evaluated Plaintiff's credibility, the ALJ *did* consider Plaintiff's subjective complaints, which are reflected in the RFC assessment limiting her to a range of simple work to accommodate her mental impairments. To address Plaintiff's neck pain and decreased neck mobility, the ALJ limited Plaintiff to light exertional work as well as no climbing of ladders, ropes, or scaffolds, and just occasional stooping and climbing of ramps and stairs. (Tr. 40). To address her carpal tunnel syndrome and avoid its

---

[8] One examiner noted Plaintiff's anxiety appeared to be situational. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding mental impairment symptoms that are "situational in nature" not a basis for disability).

[9] The Court notes Dr. Lukas Zebala, Plaintiff's treating orthopedist, opined that Plaintiff could not return to work as nurse/nurse aide due to permanent neurological changes. (Tr. 609–611). Specifically, that Plaintiff had handling, fingering, and reaching limitations due to carpal tunnel syndrome, and spinal disorders would prevent work as a nurse. The ALJ agreed and precluded Plaintiff from returning to her past work as a nurse. *See* (Tr. 43).

[10] Plaintiff argues that the ALJ failed to acknowledge Plaintiff's limitations in performing these activities. Doc. [21] at 9. However, the ALJ pointed to daily activities, (Tr. 42), that Plaintiff *herself* reported during a June 2019 examination, (Tr. 624).

13

"exacerbation," the ALJ limited Plaintiff bilaterally to just frequent handling and fingering and occasional overhead reaching, pushing, or pulling. (Tr. *Id.*). To address Plaintiff's mental impairments, the ALJ limited her to occasional interaction with the public, simple routine tasks, and work that is not fast paced. (Tr. 41).

In conclusion, the Court finds the ALJ adequately, if not expressly, applied the *Polaski* factors and other factors, and sufficiently considered Plaintiff's complaints of disabling pain and symptoms, but expressly discredited them for good reasons. *See Gowell*, 242 F.3d at 796 (explaining the court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain"). While Plaintiff disagrees with the ALJ's analysis of how her impairments limited her ability to work, the question before the Court is whether substantial evidence supports the ALJ's decision, not whether substantial evidence could lead to a different outcome. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citing *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014)); *Cox*, 495 F.3d at 617 ("It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo.") (internal citations omitted). As such, the Court finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff's physical and mental limitations did not preclude her from performing light work with certain restrictions. While some evidence in the record could lend support to a more restrictive RFC finding, the Court cannot say that the ALJ's decision "lies outside the available zone of choice." *Hacker*, 459 F.3d at 938.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 28th day of June 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE